UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER BERMUDEZ,<br><br>            Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No. 1:22-cv-01465-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 16, 18). |

       This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

       Plaintiff argues in his brief, as amended, that the ALJ (1) erred in evaluating the opinion of Dr. Alexandre Rasouli, (2) failed to provide sufficient reasons to reject Plaintiff's subjective complaints, and (3) erred in evaluating lay witness testimony. (ECF No. 18, pp. 15-26).

       Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

**I.   ANALYSIS**

**A.  Dr. Rasouli Opinion**

Plaintiff argues that the ALJ erred in evaluating the opinion of Dr. Rasouli, who prepared a physical medical source statement, stating that Plaintiff was capable of sitting and standing less than two hours in an 8-hour working day. (ECF No. 18, pp. 16-20; A.R. 1298) Defendant argues that the ALJ properly evaluated this opinion under the pertinent legal standards. (ECF No. 21, pp. 24-27).

Because Plaintiff applied for benefits in 2018, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 248-58). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Accordingly, under the new regulations, "the decision to discredit any medical opinion,

must simply be supported by substantial evidence." *Id.* at 787. Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

Lastly, as Plaintiff's argument ultimately attacks the ALJ's RFC formulation, the Court notes that the ALJ assessed the following RFC for Plaintiff:

> After careful consideration of the entire record, the undersigned finds that claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). *Claimant is able to sit for 8 hours out of 8 hours; and he can stand and walk for 2 hours out of 8 hours*. He must have the ability to shift positions without leaving his duty station. Claimant is able to lift, carry, push, or pull negligible weights, such as files or documents, weighing up to 5 pounds frequently and up to and including 10 pounds occasionally. He should never reach overhead with his left upper extremity. He can frequently reach in all other directions with that extremity but not repetitively. Claimant, who is right hand dominant, should never engage in hard, repetitive grasping, such as would be required to open a sealed jar or to use pliers, with his left upper extremity. He should never climb ladders, ropes, or scaffolding. Claimant can occasionally climb stairs or ramps; stoop; kneel; crouch; and crawl. He should never have concentrated exposure to vibration. Claimant should never be exposed to unprotected heights.

(A.R. 25) (emphasis added).

In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g).

With the above standards in mind, the Court turns to the opinion of Dr. Rasouli. In deeming this opinion "not persuasive," the ALJ stated as follows:

> The opinion of Alexandre Rasouli, M.D., a treating surgeon, is not persuasive because it is not well supported or consistent with the record (Exhibit 27F). Dr. Rasouli's opinion lacks support in that it consists primarily of checked boxes without explanation, and there is no evidence Dr. Rasouli treated claimant after November 13, 2019 (Exhibit 29F/11). Dr. Rasouli stated claimant follows up "at least 3x/year" but this is inconsistent with his treatment records (E.g., Exhibit 29F). Furthermore, Dr. Rasouli's opinion is inconsistent with clinical signs and post-surgical imaging studies, discussed above, which are not entirely consistent with claimant's subjective allegations of pain (*E.g.*, Exhibits 32F, 25F/8, 23F, 22F/7, 18F/11, 17F/32).

(A.R. 30).

As to supportability, the ALJ reasonably concluded that the lack explanation for the opinion rendered it "not well supported." (A.R. 30); *see Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."). Most pertinent here, Dr. Rasouli's conclusion that Plaintiff was capable of only sitting and standing less than two hours in an 8-hour workday was contained in a checkbox format without any supporting explanation. Additionally, the majority of the physical medical source statement consists of check-format boxes regarding Plaintiff's abilities without supporting explanation. The Court acknowledges Plaintiff's argument that Dr. Rasouli made clinical findings that could support the sitting/standing limitations, *e.g.*, that Plaintiff had herniated discs and radiculitis following surgery. (ECF No. 18, p. 17). While such general observations in the medical record could support a conclusion that Plaintiff had limitations of some sort, Dr. Rasouli never cited any specific support for the conclusion that Plaintiff was limited to sitting/standing for less than two hours and Plaintiff has failed to provide any developed argument as to how such observations support this conclusion. Additionally, the fact that Dr. Rasouli did not treat Plaintiff after November 13, 2019,[1] was a valid consideration in considering the quality of the medical opinion. *See* 20 C.F.R. § 404.1520c(c)(3)(i) ("The length of time a medical source has treated you

---

[1] The ALJ issued the underlying decision in this case on June 29, 2021. (A.R. 32).

4

1 | may help demonstrate whether the medical source has a longitudinal understanding of your
2 | impairment(s).").

3 | As to consistency, the ALJ reasonably concluded that Dr. Rasouli's opinion was
4 | inconsistent with clinical signs and post-surgical imaging studies discussed earlier in the ALJ's
5 | decision.[2] (A.R. 30); *Woods*, 32 F.4th at 793 (upholding decision to find opinion unpersuasive
6 | "because it was inconsistent with the overall treating notes and mental status exams in the
7 | record"). Among other things, the ALJ discussed "signs and post-surgical imaging studies [that
8 | were] consistent with the limitations in the RFC (*E.g.*, Exhibits 25F/8, 23F, 22F/7, 18F/11),"
9 | noting "[p]ost-surgical X-rays of claimant's lumbar spine [that] showed intact hardware and no
10 | complications (Exhibit 16F/9 & 11-12)" and "[a]n April 2018 CT scan [that] showed limited
11 | osseous healing but no spondylosis and improved foraminal narrowing (Exhibit 18F/39-40)."
12 | (A.R. 27). Moreover, the ALJ noted various records finding that Plaintiff had normal gait, did not
13 | use an assistive device, and had normal range of motion. (A.R. 26-28).

14 | The Court acknowledges Plaintiff's argument that the ALJ did not specifically discuss
15 | certain medical notes, such as Plaintiff being at risk of falling due to unsteadiness caused by pain.
16 | (ECF No. 18, p. 20; A.R. 1023). However, none of these few cited records, when considered in
17 | terms of the record as a whole and the ALJ's reasoning, are so probative as to render the ALJ's
18 | decision unsupported by substantial evidence. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d
19 | 1006, 1012 (9th Cir. 2003) (agreeing "that the ALJ was not required to discuss every piece of
20 | evidence and that the ALJ's decision was [otherwise] supported by substantial evidence"). And to
21 | the extent that Plaintiff advocates for a different interpretation of the record, the ALJ's
22 | determination was reasonable and thus it must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679
23 | (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the
24 | ALJ's conclusion that must be upheld.").

25 | Accordingly, the Court concludes that the ALJ did not err by finding Dr. Rasouli's

---

[2] The ALJ found an inconsistency between Dr. Rasouli's statement that Plaintiff was treated at least 3x/year and the treatment records. The parties dispute whether the record at issue meant at least three times in one year (Plaintiff's interpretation at ECF No, 18, p. 18) or three time per year (the Commissioner's interpretation at ECF No. 21, p. 26). Ultimately, the Court finds it unnecessary to resolve this issue, as the ALJ properly discounted Dr. Rasouli's opinion for the other reasons cited.

opinion to be "not persuasive" after consideration of the supportability and consistency factors.

### B. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to reject Plaintiff's subjective complaints of pain. (ECF No. 18, pp. 21-23). Defendant argues that the ALJ properly discounted the degree of symptoms that Plaintiff complained of. (ECF No. 21, pp. 17-23).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (A.R. 26). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by

substantial evidence, for not giving full weight to Plaintiff's symptom testimony. Here, the ALJ provided the following recitation regarding Plaintiff's subjective complaints:

> Claimant alleges he experiences a variety of primarily physical impairments and symptoms that limit his daily activities and ability to perform various work-related physical and mental activities, including but not necessarily limited to lifting, carrying, sitting, standing, and walking. His allegations include, but are not limited to, allegations of back pain, radiating pain into the lower left extremity, left knee pain, left shoulder pain, and side effects of medication such as tiredness and "feeling disoriented" (Exhibit 5E/2). He testified he uses a cane outside the home. He alleged in a March 2018 Function Report that he cannot lift over 5-10 pounds, sit longer than 20 minutes, lift above shoulder height, walk more than 10 minutes at a time, and walk about 100 yards total before needing to rest. He also testified he needs to lie down "at least" 10-15 minutes every hour.
>
> . . . .
>
> Initially, the undersigned notes multiple State agency consultants reviewed claimant's records at the initial level and at the reconsideration level and determined he was not as disabled as alleged. State agency medical consultants C. Bullard, M.D., and L. Kiger, M.D., reviewed records at the initial level and the reconsideration level, respectively, and concluded claimant had a light RFC with additional non-exertional limitations (*See* Exhibits 1A, 3A). . . . Although the undersigned finds the record supports additional exertional and manipulative limitations, these prior administrative medical findings are otherwise persuasive.
>
> . . . .
>
> Claimant also attended a consultative examination in January 2019 where he walked without an assistive device, had full (5/5) strength in all extremities, and only "slight sensory impairment on the left lower leg" (Exhibit 23F/5). He had mild spasms in the lumbar spine but none noted elsewhere, and ranges of motion were reduced in the lumbar spine but within normal limits in all other areas, including his left upper extremity (Exhibit 23F/4-5). Reflexes were normal and symmetrical, as well. . . . Similar signs are found throughout the remainder of the record (See Exhibits 26F, 25F/8, 22F/7, 18F/11).
>
> . . . .
>
> Claimant was observed using a cane during one clinical visit in September 2019, at which time he reported back surgery had not improved his pain, but clinical signs remained largely consistent with earlier signs, which supports significant limitations in the RFC but is not consistent with allegations of additional limitations (See Exhibit 28F/19). Furthermore, he had been instructed by his surgeon in March 2018 to wean off the cane he had been prescribed during the immediate post-surgical recovery period (Exhibit 29F/9). Clinically, claimant continued demonstrating positive straight leg raise on the left side, but he was in no apparent distress and ranges of motion were improved with no limitations with

7

> lumbar flexion, lateral bending, or lateral rotation. Strength and reflexes remained intact as well . . . .
>
> He received an epidural injection at that time, which is consistent with allegations of pain, but the etiology of ongoing pain was not established. His treating surgeon ordered an MRI of the thoracic spine, which was suspected as a possible source of pain, but the MRI was unremarkable. (Exhibits 28F/6-7, 29F/11-13). The surgeon stated a CT scan of the lumbar spine would help assess the instrumentation in claimant's lumbar spine, which might also be a potential source of pain, but there is no evidence that study was performed. (Exhibit 29F/11; *see* Exhibit 30E).
>
> In fact, the only other objective evidence of treatment for pain in 2020 and 2021 comes from a nurse practitioner's records who managed claimant's chronic medical conditions (i.e., diabetes, hypertension) (Exhibit 26F; *see* Exhibit 30F). The nurse reported claimant had ongoing back pain (but no mention of upper extremity pain), which she reported was treated with Neurontin and Flexeril, but her records do not contain signs or laboratory findings consistent with the symptom severity alleged by claimant (*See* Exhibits 29F/11, 26F/62; SSR 16-3p; *see also* Exhibit 30F). She noted occasional "tenderness" but normal gait, normal ranges of motion, and no assistive device, which is widely inconsistent with claimant's testimony that he used a cane anytime he left his home (*E.g.*, Exhibit 26F/57; *see also* Exhibit 30F/7 (noting no musculoskeletal or neurologic abnormalities)). The nurse practitioner also did not record functional limitations consistent with those alleged by claimant, such as inability to sit more than 20 minutes or walk more than 10 minutes at one time.
>
>         . . . .
>
> Significant, persistent medication side effects are also not reflected in treatment notes, and certainly not to the degree testified to by claimant, and treatment records do not indicate he needed to lie down frequently or shift positions repeatedly throughout the day. Likewise, claimant's allegations and testimony regarding sitting and walking limitations are not corroborated by treatment notes, which indicate claimant had pain but no limitations consistent with his allegations (*See, e.g.*, Exhibits 18F, 22F, 25F, 26F, 29F, 32F). The undersigned has, however, taken into account allegations that pain is exacerbated by activity and improved with rest (*E.g.*, Exhibits 4F, 18F, 29F, 32F).
>
> With regard to allegations that a cane is needed, there is no support for this in record. As discussed above, a cane was intended to be used only during the acute post-operative phase, and his surgeon instructed him to wean off shortly after surgery (Exhibit 29F/9). Claimant was subsequently repeatedly observed without a cane and with a normal gait. Thus, no medical need is established, contrary to claimant's allegations (*See* 20 CFR Pt. 404, Sub. P, App. 1, 1.00C6).
>
> Thus, considering the entire record, the undersigned finds the record supports the limitations in the RFC but no additional limitations, and allegations to the contrary are not well supported.

(A.R. 26-29).

1       As seen above, the ALJ discounted Plaintiff's subjective complaints, in part, because there was a lack of supporting evidence. (*See* A.R. 28-29, noting lack of corroborating treatment notes for sitting limitations). While the lack of supporting evidence cannot be the sole basis to discount testimony, it can be a factor, and was properly considered here. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Moreover, the Court notes that, while the ALJ ultimately declined to fully credit Plaintiff's subjective complaints, the ALJ considered them in formulating the RFC, for example, by limiting Plaintiff to standing and walking for 2 hours out of 8 hours. (A.R. 25).

      Additionally, the ALJ discounted the degree of Plaintiff's subjective complaints because they were inconsistent with the record. For example, although the ALJ acknowledged Plaintiff's pain symptoms, the ALJ noted that Plaintiff often had normal clinical findings, such as normal range of motion and gait, and was not observed using a cane.[3] (*See* A.R. 28-29 – noting inconsistency between Plaintiff's testimony of cane use and the record); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Likewise, the ALJ noted that multiple State agency medical consultants had reviewed the record and determined that Plaintiff was not disabled. (A.R. 26, citing Exhibits 1A and 3A). The ALJ found these generally persuasive, but crafted an even more restrictive RFC for Plaintiff, which limited him to sedentary work, the least demanding physical exertional classification available. (A.R. 26, 29, 78-94, 95-111); *see* 20 C.F.R. § 404.1567 (listing physical exertion requirements for sedentary work).

      In short, the Court concludes that the ALJ provided clear and convincing reasons to reject Plaintiff's subjective complaints.

\\\

---

[3] Plaintiff points out that certain medical records do not specifically state that Plaintiff did not have a cane; however, the Court finds it reasonable for the ALJ to conclude that the lack of mention of a cane indicates that Plaintiff did not use one. (ECF No. 18, p. 22).

**C. Lay Witness Testimony**

Plaintiff also argues that the ALJ erred by failing to articulate sufficient reasons to reject the lay testimony of his wife, who among other things, stated that Plaintiff was unable to stand for longer than 15 minutes at one time or walk more than 40 yards before needing to rest. (ECF No. 18, pp. 24-26; A.R. 321, 323).

On this issue, the ALJ concluded as follows:

> In evaluating claimant's statements regarding the intensity and persistence of symptoms, the undersigned considered third party statement by claimant's wife per Social Security Ruling 16- 3p (Exhibits 6E, 19E). However, such evidence is "evidence from non-medical sources," and the undersigned is not required to articulate how evidence from nonmedical sources was considered using the requirements for evaluating medical opinions (*See* 20 CFR 404.1513(a)(4), 404.1520c(d)). Nonetheless, her allegations are not entirely consistent with the record (*E.g.*, Exhibits 1A, 3A, 32F, 25F/8, 23F, 22F/7, 18F/11, 17F/32)..

(A.R. 30).

The parties dispute the applicable standard, with Plaintiff arguing that the ALJ is required to articulate germane reasons to discount lay witness statements, and Defendant arguing that, under relevant new regulations, no such articulation is required. (ECF No. 18, p. 25; ECF No. 21, pp. 27-28).

The Court notes that there is caselaw indicating that an ALJ need not articulate the reasons to discount lay witness statements under the revised regulations. *See Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) ("It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions."); *Neri v. Comm'r of Soc. Sec.*, No. 1:21-CV-01235-SAB, 2022 WL 16856160, at *7 (E.D. Cal. Nov. 10, 2022) (opining that, under the revised regulations, an ALJ must consider, but not necessarily articulate how the ALJ considered lay testimony, and concluding that, in any event, the result would be the same if the germane-reasons standard applied).

Ultimately, the Court need not resolve this dispute. Importantly, courts have declined to reverse on this issue where an ALJ provided clear and convincing reasons to reject a Plaintiff's

complaints, where such complaints were similar to the lay testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). Here, the lay witness statements at issue were similar to Plaintiff's own complaints about his symptoms and limitations, notably that he could stand for 20 minutes and walk for about 100 yards. (*See* A.R. 306, 311). As discussed above, the ALJ provided sufficient reasons to reject Plaintiff's complaints. Accordingly, the opinion was likewise sufficient to discount the lay witness statements.

## II.  CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated:  **October 25, 2023**          /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE